UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
MYRNA SANTOS, as Executor of the Estate of :
FRANKLIN CRUZ SANTOS, Deceased, and MYRNA :
SANTOS, Individually :
: **MEMORANDUM AND ORDER**
Plaintiff, :
: 14-CV-2698(DLI)(CLP)
-against- :
:
COSTA CRUISE LINES, INC., CARNIVAL CRUISE :
LINES, INC., and CARNIVAL PLC, :
:
Defendants. :
------------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Myrna Santos ("Plaintiff-Executor") is suing on her own behalf and on behalf of the estate of her deceased husband, Franklin Cruz Santos ("Plaintiff-Decedent") (collectively the "Plaintiffs") for injuries resulting allegedly from Defendants Costa Cruise Lines, Inc., Carnival Cruise Lines, Inc., and Carnival PLC's (collectively the "Defendants") negligence.[1] (Compl. ¶¶ 5-7, 21-23.) Defendants move to dismiss for *forum non conveniens* because of a forum-selection clause in Plaintiffs' Passage Ticket Contract. (Defs.' Mem. 1-3.) In the alternative, Defendants move for judgment on the pleadings or to strike Plaintiffs' request for non-pecuniary and

---

[1] Defendants brought to the Court's attention that Plaintiffs may have named the wrong companies in their Complaint. (Mem. of Law in Support of Defs.' Mot. to Dismiss, Mot. for J. on the Pleadings, or Mot. to Strike ("Defs.' Mem.") 1-3, Dkt. Entry No. 16.) Specifically, Florida Secretary of State records confirm there is no active corporate entity known as Carnival Cruise Lines, Inc. (*See* "Carnival Cruise Lines, Inc.," Foreign Profit Corp., Div. of Corps., Florida Dep't of State attached as Exhibit 4 to Decl. of Thad T. Dameris in Supp. of Defs. Mot. to Dismiss, Dkt. Entry No. 23). Additionally, Costa Cruise Lines, Inc. is a "sales and marketing agent" for Costa Crociere S.p.A. (*See* "Costa Cruise Lines, Inc.," 2014 Florida Profit Corp. Annual Report, Div. of Corps., Florida Dep't of State attached as Exhibit 2 to Decl. of Thad T. Dameris) As outlined in the Plaintiffs' Passage Ticket Contract, Costa Crociere S.p.A is the actual owner and Carrier responsible for operating the cruise ship, the *Costa Favolosa,* on which the events that are the subject matter of this case occurred. (*See* Passage Ticket Contract attached as Exhibit 1 to Decl. of Ruben Perez in Supp. Defs. Mot. to Dismiss at 7, Dkt. Entry No. 18.) However, none of these claims affect the Court's analysis, except that the Court notes that Costa Crociere S.p.A. is the Carrier of the *Costa Favolosa* and Carnival Cruise Lines, Inc. is an agent of Costa Crociere S.p.A. per the Passage Ticket Contract. (*See* Passage Ticket Contract at 7.)

punitive damages. (*Id.*) For the reasons set forth below, Defendants' motion to dismiss is granted for *forum non conveniens*.

## BACKGROUND

Plaintiffs took a cruise on Defendant Costa Cruise Lines' ship, the *Costa Favolosa*. (Compl. attached to Notice of Removal ¶¶ 17-18, Dkt. Entry No. 1.) The Plaintiffs purchased their cruise tickets for travel aboard the *Costa Favolosa* on or about August 16, 2012. (*Id.* ¶ 17.) Plaintiff-Decedent completed the online check-in for Plaintiffs on September 25, 2012. (Decl. of Ruben Perez ¶ 7; Decl. of Myrna Santos in Opp'n to Defs.' Mot. to Dismiss ¶ 7, Dkt. Entry No. 20; Mem. of Law in Opp'n to Defs' Mot. to Dismiss, Motion for Judgment on the Pleadings, or Motion to Strike ("Pls.' Opp'n") at 11, Dkt. Entry No. 19.)[2] Plaintiffs' Passage Ticket Contract was sent via email to their travel agent, Cruisedeals, Inc. on October 5, 2012.[3] (Decl. of Ruben Perez ¶ 8; Pls. Opp'n at 11.) Using their Passage Ticket Contract, which was needed to board the ship, Plaintiffs then departed for a one-week cruise from Genoa, Italy aboard the *Costa Favolosa* on November 4, 2012. (Compl. ¶ 18; Decl. of Ruben Perez ¶ 4.) On November 10, 2012, Plaintiff-Decedent suffered a heart attack while aboard the *Costa Favolosa*. (Compl. ¶ 19.) The *Costa Favolosa*'s on board doctor diagnosed Plaintiff-Decedent with a heart attack and sent him to the nearest hospital, which was the General Hospital Dubrovnik in Croatia. (*Id.* ¶¶ 20-21.) Plaintiff-Decedent died in the hospital on November 12, 2012. (*Id.* ¶ 23.)

Plaintiffs brought suit in New York State Supreme Court, Queens County, on October 25, 2013 against Defendants alleging that Defendants' negligence caused Plaintiff-Decedent's death.

---

[2] Plaintiff-Executor does not dispute that the web check-in was completed on September 25, 2012, but merely states that her husband completed the check-in and, therefore, she did not receive the Passage Ticket Contract prior to boarding the cruise ship. (Decl. of Myrna Santos ¶ 7.)

[3] Again, Plaintiff-Executor does not dispute that the Passage Ticket Contract was sent to Plaintiffs' travel agent, she only states that she did not receive it before boarding the cruise ship. (Decl. of Myrna Santos ¶ 7.)

(*Id.* ¶¶ 26-27.) Specifically, Plaintiffs claim that Defendants acted negligently in failing to treat properly Plaintiff-Decedent aboard the *Costa Favolosa* and in bringing Plaintiff-Decedent to an inadequate hospital. (*Id.* ¶¶ 23, 26 & 35.) Defendants removed the suit to this Court on April 30, 2014 and subsequently filed this Motion to Dismiss on August 11, 2014. (Notice of Removal, Dkt. Entry No. 1; Mot. to Dismiss, Dkt. Entry No. 15.) Defendants argue that the suit should be dismissed for *forum non conveniens* because a forum-selection clause in Plaintiffs' Passage Ticket Contract, which Plaintiffs agreed to be bound by when they used it to board the *Costa Favolosa*, designates that:

> All claims, controversies, disputes, suits and matters of any kind whatsoever arising out of, concerned with or incident to any voyage that does not depart from, return to, or visit a U.S. port . . . shall be instituted in the courts of Genoa, Italy to the exclusion of the courts of any other country, state or nation. Italian law shall apply to any such proceedings.

(Defs.' Mem. at 8; Decl. of Ruben Perez ¶ 4; Passage Ticket Contract attached as Exhibit 1 to Decl. of Ruben Perez at 7.) The Passage Ticket Contract also has a notice on the first page instructing:

> IMPORTANT NOTICE! PLEASE READ THIS TICKET IN FULL UPON RECEIPT AS IT LIMITS YOUR LEGAL RIGHTS
> In accepting this ticket, Guests agree to be bound by all of its terms including its limitations of the Guest's rights. Each Guest should carefully examine the ticket, especially the section noted "GENERAL CONDITIONS OF PASSAGE TICKET CONTACT" located on pages 7 through 9 of this document.

(Passage Ticket Contact at 1.) Defendants also argue that the forum-selection clause in the Passage Ticket Contract applies to all Defendants because of the "broad" language of the forum-selection clause and because another section of the contract covers parent companies and agents, stating:

> All of the defenses, limitations and exemptions of whatever kind relating to the responsibility of the Carrier that may be invoked by the Carrier by virtue of this Contract . . . are fully extended to and may also be invoked by all persons or entities . . .

3

> on whose behalf the Carrier may act. Such persons and entities may include without limitation (I) the Carrier's parents . . . representatives, [and] agents . . . .

(Defs.' Mem. 14-15; Passage Ticket Contract at 7.) In the alternative, Defendants ask the Court to enter judgment on the pleadings or to strike Plaintiffs' request for non-pecuniary and punitive damages. (Defs.' Mem. at 19-25.) Plaintiffs oppose on the grounds that the "forum-selection clause . . . should not be enforced based on the principles of fundamental fairness" because Plaintiffs would be "denied [their] day in court" if the Court enforced it and that "the Defendants are subject to the jurisdiction of the courts in New York and [therefore] . . . there will be no prejudice in keeping the action here." (Pls.' Opp'n at 9 & 14.) Plaintiff-Executor also argues that she never received or reviewed a copy of the ticket because Plaintiff-Decedent "performed the web-check-in for the Santoses." (*Id.* at 4; Decl. of Myrna Santos ¶ 7.)

## DISCUSSION

### I. Standard of Review

"A valid and enforceable contractual forum-selection clause can constitute sufficient grounds for dismissal." *Yovel-Bash v. Wellesley Asset Secured Portfolio, Inc.,* 2013 WL 4781539, *8 (S.D.N.Y. Sep. 5, 2013) (citing *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 478 (2d Cir. 2011)). The Court's first step in evaluating a motion to dismiss for *forum non conveniens* due to a forum-selection clause is to determine whether the clause is valid. *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. Of Tex.*, 134 S.Ct. 568, 581 n.5 (2013). Once it is determined that the clause is valid, then the court enforces the forum-selection clause by applying the modified *forum non conveniens* analysis as outlined by the Supreme Court in *Atlantic Marine. See id.* at 580.

In deciding a motion to dismiss for *forum non conveniens* based on a forum-selection clause, a district court may rely on the pleadings and affidavits. *Martinez v. Bloomberg LP*, 740

F.3d 211, 216-17 (2d Cir. 2014) (citing to *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987); *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 384 (2d Cir. 2007)). However, the court must conduct an evidentiary hearing to resolve disputed factual questions in favor of the defendant. *See id.* at 217 (citing to *new Moon Shipping Co. Ltd. V. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997). Here, the Plaintiffs have neither raised any disputed issues of fact nor requested an evidentiary hearing. Therefore, the Court will proceed solely on the pleadings and affidavits.

## II. The Forum-Selection Clause is Valid

The Court must apply a four-part analysis when determining whether a forum-selection clause is valid. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). The first inquiry is whether the clause "was reasonably communicated to the plaintiff[,]" which is "a question of law." *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995). Second, the Court must analyze whether the clause is mandatory or permissive. *See Phillips*, 494 F.3d at 383. Third, the Court must determine "whether the claims and parties involved in the suit are subject to the forum-selection clause." *Id.* "If the forum clause was communicated to the resisting party, has mandatory force[,] and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Id.* The final part of the analysis is to ascertain "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383-84 (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972)).

**1. The Forum-Selection Clause Was Reasonably Communicated to the Plaintiffs**

The forum-selection clause was reasonably communicated to the Plaintiffs. The Second Circuit applies a two-part test to determine whether a forum-selection clause was reasonably communicated to a passenger on a cruise ship. The Court first must look to "'whether the physical characteristics of the ticket itself reasonably communicated to the passenger the existence therein of important terms and conditions that affected the passenger's legal rights, and [then it must look at] whether the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract permitted the passenger to become meaningfully informed of the contractual terms at stake.'" *Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F. Supp. 2d 352, 360 (S.D.N.Y. 2004) (quoting *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523–24 (2d Cir.2001)).

Courts in this Circuit have found that passengers had reasonable opportunities to become meaningfully informed of the contract terms in their tickets when the tickets were available to them for as little as two weeks before their cruise departed. *See id.* at 360. This is true even if the passengers do not immediately take possession of tickets that are held by a spouse, travel agent, or other travel companion. *See e.g. Palmer v. Norwegian Cruise Line & Norwegian Spirit*, 741 F. Supp. 2d 405, 413-14 (E.D.N.Y. 2010) (finding that ticket being held by family of another passenger gave plaintiff sufficient opportunity to become aware of the passenger ticket contract); *Kientzler v. Sun Line Greece Special Shipping Co., Inc.*, 779 F. Supp. 342, 346 (S.D.N.Y. 1991) (finding plaintiff had notice of passage ticket contract when travel was arranged by her employer, even though plaintiff had no knowledge of who actually held her ticket). The focus of this part of the analysis is to evaluate the "'subjective circumstances attending a particular plaintiff's opportunity to review the ticket terms before embarkation.'" *Ward v. Cross Sound Ferry*, 273

F.3d 520, 525 (2d Cir. 2001) (quoting *Ames v. Celebrity Cruises, Inc.*, 1998 WL 427694, *5 (S.D.N.Y. July 29, 1998)).

Here, both factors are present. First, the physical characteristics of the Passage Ticket Contract reasonably communicated to Plaintiffs the existence of important terms and conditions affecting their legal rights. The first page of the Passage Ticket Contract held an important notice in capital letters directing Plaintiffs to read the document carefully because it affected their legal rights. Second, the Plaintiffs' purchase and retention of the ticket permitted them to become meaningfully informed of the contractual terms at stake. The Passage Ticket Contract was sent to Plaintiffs' travel agent nearly one month before their cruise. Additionally, when the ticket was downloaded, it was necessary for Plaintiffs or their travel agent to acknowledge and accept the terms and conditions of the Passage Ticket Contract. Plaintiff-Executor's claims that she did not have knowledge of the contract terms because Plaintiff-Decedent performed the check-in and she neither received a copy of the Passenger Ticket Contract via e-mail nor through their travel agent are irrelevant because the Plaintiffs had an entire one-month period from when their travel agent received the ticket to when they boarded the ship to become meaningfully aware of the contact terms at stake. Therefore, the forum-selection clause was meaningfully communicated to the Plaintiffs.

### 2. The Forum-Selection Clause Is Mandatory

The forum-selection clause specifically provides that "*[a]ll* claims, controversies, disputes, suits and matters of any kind whatsoever arising out of, concerned with or incident to any voyage . . . shall be instituted in the courts of Genoa, Italy to the *exclusion* of the courts of any other country, state or nation." (Passage Ticket Contract at 7 (emphasis added).) The

language of the forum-selection clause is clearly mandatory as it requires all claims to be litigated in Italy to the exclusion of any other forums.

### 3. All of the Parties are Subject to the Forum-Selection Clause

The Second Circuit has held that:

> [A] a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is "closely related" to another signatory . . . . [such that] the non-signatory's enforcement of the forum selection clause is foreseeable to the signatory against whom the non-signatory wishes to enforce the forum selection clause.

*Magi XXXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013).

All Defendants are clearly able to enforce the forum-selection clause as their enforcement was foreseeable to Plaintiffs. The Passage Ticket Contract allows both parents and agents to claim "[a]ll of the defenses, limitations and exemptions . . . relating to the responsibility of the Carrier that may be invoked by the Carrier by virtue of this Contract . . . ." (Passage Ticket Contract at 7.) As the Passage Ticket Contract conveys that all defenses and limitations in the contract are available to Carrier Costa Crociere S.p.A.'s parents, it is reasonably foreseeable that Defendants Carnival Cruise Lines, Inc. and Carnival PLC would seek to enforce the forum-selection clause against the Plaintiffs. The same is true for Defendant Costa Cruise Lines, Inc., which is specifically listed as an agent of the Carrier in the Passage Ticket Contract. (*See* Passage Ticket Contract at 7.) Therefore, the Court finds that Plaintiffs and all three Defendants are subject to the forum-selection clause.

### 4. Enforcement of the Forum-Selection Clause is not Unreasonable or Unjust and the Clause is Not the Product of Fraud or Overreaching

Plaintiff argues that the forum-selection clause should not be enforced due to reasons of "fundamental fairness." (Pls.'s Opp'n at 9.) In particular, Plaintiff argues that: 1) the selected

forum is a "remote alien forum" in light of the fact that Plaintiff lives in the U.S. and Defendant companies are located in the U.S.; 2) that it is a practice meant to discourage U.S. citizens from pursuing claims against U.S. companies; and 3) that the Passenger Ticket Contract required Plaintiffs to forfeit at least fifty percent of their cruise fares, should they cancel the trip. (*Id.* at 9-11; Passenger Ticket Contract at 8.) Defendants oppose.

The Court finds Plaintiffs arguments unavailing. As an initial matter, Plaintiffs have not made any allegations of fraud or overreaching that would invalidate the forum-selection clause. Instead, Plaintiffs rely on issues of "fundamental fairness" that the Court does not find convincing. First, as Plaintiffs traveled on an Italian-flagged ship that departed from and returned to an Italian port, it is clearly foreseeable that Genoa, Italy would be the chosen forum in the forum-selection clause. Also, Carnival PLC's principle place of business is in England, and, therefore, it is not a U.S. company, as Plaintiff alleges. (Exhibit 3 attached to Decl. of Thad T. Dameris.)

Second, the Court may not consider any inconvenience to Plaintiffs caused by their having to litigate their case in Italy as "'[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting.'" *Atlantic Marine*, 134 S.Ct. at 582 (quoting *Bremen*, 407 U.S. at 17-18). In an almost identical case, the Second Circuit did not find the forum-selection clause fundamentally unfair. *See Effron,* 67 F.3d at 10. In *Effron*, the Second Circuit upheld a forum-selection clause where the plaintiff sailed on a Greek ship from Greece and the chosen forum was in Greece. The Second Circuit explained that, where a cruise ship typically carries passengers from many locales, it was "reasonable . . . to select a single venue for passenger suits and, if a forum was to be selected, Greece was the most reasonable choice." *Id.* at 11. Additionally, the Second Circuit

9

pointed out that the inconvenience of litigating in a foreign forum does not carry significant weight from a plaintiff who traveled to a foreign destination for vacation. *See id.* Plaintiffs also have not put forward reasons why litigating in Italy would be prejudicial, apart from it being inconvenient.

Third, Plaintiffs' argument that they would have had to forfeit fifty percent of their ticket cost in order to reject the terms of the Passage Ticket Contract is unpersuasive. The majority of courts that have addressed this issue have found the clause enforceable despite the financial penalty, as long as the passengers received their tickets in time to read the passenger ticket contacts and cancel their trip if they rejected the contract's terms. *See, e.g.*, *Valenti v. Norwegian Cruise Line*, 2005 WL 927167, *4-5 (S.D.N.Y. Apr. 21, 2005) (finding forum-selection clause fair even though plaintiffs believed they would have forfeited significant payments); *Boyles v. Cunard Line Ltd.*, 1994 WL 449251, *3 (S.D.N.Y. Jan. 11, 1994) (finding forum-selection clause fair although the passenger would have been required to forfeit part of the passenger ticket cost or deposit cost if she canceled the cruise); *Miller v. Regency Maritime Corp.*, 824 F. Supp. 200, 203 (N.D. Fla. 1992) (district court did not invalidate clause where plaintiff would have had to forfeit forty percent of her ticket cost). *C.f. Corna v. American Hawaii Cruises, Inc.*, 794 F. Supp. 1005, 1011-12 (D. Haw. 1992) (court found a forum-selection clause unenforceable where it would have required the plaintiffs to forfeit their entire ticket price and *incur additional penalties*). Forfeiting fifty percent of the ticket price, alone, is not enough to invalidate the forum-selection clause. Additionally, the Passenger Ticket Contract was available for Plaintiffs to review on Defendant's website at the time Plaintiffs first booked their tickets. (Decl. of Ruben Perez ¶ 9; Copy of Terms and Conditions that appears on Costa Crociere at the time Plaintiffs purchased their tickets attached as Exhibit 4 to Decl. of Ruben Perez.) As Plaintiffs booked their trip in

March, Plaintiffs could have reviewed the Passenger Ticket Contract far enough in advance to avoid incurring any penalties for canceling their trip according to the terms of the Passenger Ticket Contract. (*See* Passenger Ticket Contract at 8.) For these reasons, the Court declines to find any issues of "fundamental fairness" in enforcing the forum-selection clause.

## II. The Forum-Selection Clause is Enforceable

Once it is determined that the parties "have agreed to a valid forum-selection clause, [then] a district court should . . . . 'give[ it] controlling weight in all but the most exceptional cases.'" *Atlantic Marine*, 134 S.Ct. at 581 (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1998)). "Only under extraordinary circumstances unrelated to the convenience of the parties" should the motion to dismiss for *forum non conveniens* be denied. *Id.* Under the modified *forum non conveniens* analysis as outlined in *Atlantic Marine,* the plaintiff bears the burden of showing "why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 582. In deciding, the court "should not consider arguments about the parties' private interests,' but "may consider arguments about public-interest factors only. *Id.* "Public interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 581 n.6 (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981). However, "because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582.[4]

---

[4] A third part to this analysis states that "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum . . . the original venue's choice-of-law rules" will not carry over. *Atlantic Marine*, 134 S.Ct. at 582. However, this part of the analysis applies to transfers from one forum to another. As the forum-selection clause in this case points a foreign forum, this part of the analysis does not apply.

Plaintiff has failed to assert any public interest factors that would provide a basis for not enforcing the forum-selection clause. First, Plaintiffs have not alleged that trial in Italian courts would pose any administrative difficulties. (*See* Pls. Opp'n at 13-14.) Second, as the case involves an Italian owned-ship that departed from and returned to Italy, and the incident occurred in a third country, Croatia, this Court has no interest in deciding this controversy in a New York, or even United States court. Plaintiffs' New York residency is the only connection to this forum, which is not enough for this Court to find an interest in keeping the case here. *See, e.g., Giglio Sub S.N.C. v. Carnival Corp.*, 523 Fed. App'x 651, 652 (11th Cir. 2013) (finding that Italian courts had interest in adjudicating a case against Costa Crociere); *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011) (Brazil had greater interest in claims brought in Florida by Florida plaintiff in action against Brazilian carrier). Third, as the forum-selection clause specifies application of Italian law to Plaintiffs claims, it will be much easier for Italian courts to adjudicate this case. Therefore, Plaintiff has not set forth any public interest factors that would prevent the Court from enforcing the forum-selection clause.

### III. Defendants' Remaining Grounds for Dismissal

As the Court dismisses the case due to the controlling forum-selection clause, it declines to adjudicate Defendants' remaining motions for judgment on the pleadings and to strike Plaintiff's non-pecuniary and punitive damages.

## CONCLUSION

For the above reasons, the Court finds the forum-selection clause valid and enforceable.

Defendants' motion is granted and this case is dismissed for *forum non conveniens*.

SO ORDERED.

Dated: Brooklyn, New York
March 10, 2015

/s/
DORA L. IRIZARRY
United States District Judge